Good morning, your honors. Alex Tomasevic for the appellants, the plaintiff consumers, Jennifer Laster, Elizabeth Voorhees. Can I ask a question at the outset? Certainly. Before we get into any of the merits, had this case been brought after Concepcion had been decided, what then would have been the, in your opinion, what would have then happened to the case? If your honor is asking about would we be sent to arbitration, the answer is we would not. Because the Concepcion case, which I was there for the oral argument on and did the briefing on, did not totally outdo or do away with California's law on unconscionability applicable to all contracts. We also have varying… You would have made an argument. You're saying you would have made an argument that it shouldn't have. Certainly. Certainly would have made that argument. And certainly I would have highlighted the different arbitration clauses at work here and applied it to the old pre-Discover Bank test that was ultimately, we know, overturned by the U.S. Supreme Court last term. And that determination would be made by the trial judge in the first instance. Exactly. In fact, it was, well, the Concepcion case consolidated with this case was already remanded by the Ninth Circuit to the trial court judge who would be presumably making the same arguments. But you would concede that a different process actually would have taken place. That is to say there would have been an inquiry into whether or not it's arbitrable, whether arbitration is required, and whether the agreement for arbitration is appropriate under all the circumstances. You would have argued no, no, no. It shouldn't go to arbitration. They would have argued yes. But that never took place in this context. That never took place, Your Honor. In fact, I suspect the defendants will make that argument. After I'm confident, what the court will do here is reverse the summary judgment ruling that we're here to discuss today, wherein the district court found that not a single one of my clients, the consumer plaintiffs, was able to prove a single material issue of fact regarding their standing. I want to primarily focus on that issue. There's also the issue of injunctive relief and whether or not there's Article III standing for injunctive relief, to which I would like to reserve one minute at the end for my colleague, Mr. Blake Harper, here to discuss and answer any questions the court may have. I would also like three minutes for rebuttal, if I may. We may, if you make sure you don't go over three minutes. The time you're allowed is 15 minus 3. Certainly, Your Honor. And I will do my best. I see the clock's already ticking. With respect to Ms. Laster, I'll just get right into it. Ms. Laster testified both in her deposition and in her declared under penalty of perjury that she relied on a free phone ad campaign from T-Mobile, that she did not know she was charged with tax on this quote-unquote free phone, that she believed she would not pay anything, including tax, for this phone, and that these ads that she relied on were everywhere. But the court erred when it focused not on that testimony, when it discounted that testimony and Ms. Laster's credibility and focused on a single web disclaimer or web pop-up proffered by the defendants. The problem with that web disclaimer, as we've outlined in the briefs, is that Ms. Laster never saw it. She declares both in her deposition and her declaration that she never saw that. For whatever reasons, the district court did not believe Ms. Laster, and through that evidence and her testimony... She said she didn't saw it, or she can't recall having seen it. She said she has no memory of ever seeing that in deposition. In her declaration, she says... Well, that's a bit different, isn't it? Well, I don't believe so, Your Honor, because the opposing counsel never said, well, is it a matter that you don't remember one way or the other, or is it a matter that you don't remember affirmatively seeing it? The testimony specifically at the record on 490, 493, 494, is where Ms. Laster says, I don't remember having ever seen that. Now, she says later in her declaration, affirmatively, I never saw that, it never formed the basis of my bargain with T-Mobile. Why are they trying to stick me with this web disclaimer? To the extent we think that's a close case or a close call, well, we already have a tribal issue of material fact, but allow me to explain what other facts are in the record that describe why it's not even that close. For instance, there are discrepancies among the web disclaimer that T-Mobile tried to foist upon Ms. Laster and the district court accepted, and the actual offer or transaction that Ms. Laster partook in. For instance, the web disclaimer says something about a rebate. Ms. Laster could not remember having anything be mentioned about a rebate in her transaction. The web disclaimer talks about how it's a web-only transaction. Ms. Laster could not remember anything and does not remember anything about a web-only transaction. In fact, obviously, the proof is in the pudding, so to speak. This was not a web-only transaction. The transaction was indeed consummated within a store. T-Mobile didn't do us any favors and specifically didn't meet its burden on summary judgment to prove affirmatively that this web disclaimer was the one offer and one set of disclaimers that Ms. Laster must have seen. They even had a declaration from the actual store associate that spoke with Ms. Laster during that day of the transaction. You would like to see, if you were T-Mobile, a declaration that says I explained this web offer or Ms. Laster brought this offer into me or I discussed the terms and particularly the tax issue. That is noticeably absent from the declaration of Rhiannon Green that T-Mobile submitted. There is no evidence that T-Mobile ever submitted that said that this disclaimer was in any way, shape, or form explained to Ms. Laster or shown to her. It was simply something that Rhiannon Green, a T-Mobile associate, found on her own accord, printed, and put into the file without ever showing Ms. Laster. What we also showed the District Court, I think, is another important piece of evidence. What T-Mobile also didn't provide us is sort of an explanation about how someone on their website might encounter this or a similar kind of disclaimer. And I explained for the District Court, and that's in my declaration at 467 through 69 and then the exhibits are at 510 through 524 of the record, what someone would have to do to reach this dispositive in a District Court view disclaimer. It would take four steps. You would have to go through three different steps that would tell you that your phone was free. And then if and only if you clicked one particular hyperlinked version, would you ever see this kind of disclaimer that the District Court relied on and that T-Mobile claims Ms. Laster must have seen and must have only seen. There's been no evidence that that's what happened.  You know, you're trying to save three minutes and you've spoken an awful lot about Ms. Laster. You've got a couple of other plaintiffs. You're absolutely right, and it would be mad at me if I didn't get along with him. I think the Court sees my point about the one disclaimer that Ms. Laster never saw and could never form the basis of this motion for summary judgment. Moving on to Mr. Thompson, we have a similar problem. The Court not only construes the evidence narrowly, but the law. I don't need to read aloud from DeBacco too. I know the Court is well aware of its holding, but to paraphrase, Mr. Thompson only needed to show that the free phone ad campaign that he was exposed to was a substantial factor. He didn't need to show that it was a dispositive factor or even the predominant factor. And in fact, what the District Court really did, and this is an important point, if you look at the District Court's ruling at ER 15, where the District Court says Mr. Thompson must show that he would not have acted the way he did had he known that the taxes were in fact imputed and calculated on an inflated stated retail price of the phone, is not consistent with Tobacco II. Tobacco II uses the word may. A plaintiff may show that there is an immediate cause or that there was a substantial factor affecting their behavior if they can also show that they would not have acted the same. But that's not a cynical or non-requirement. What do you do with a statement, yeah, I probably would have bought it anyway? Forgive me, Your Honor? So what do you do with a statement, I probably would have bought it anyway? Well, Your Honor, you have to realize that a reasonable consumer probably has a lot of reasons why they do things. In Tobacco II, we were dealing with the issue of smoking. People smoke maybe because they're addicted,  But at the issue of Tobacco II, of course, was representations regarding the health benefits or the lack of health problems with respect to smoking. We don't take a narrowly restrictive view of the factors. We don't take a hypothetical or unrealistic view of human interaction. That's why the law has always been, it wasn't just Tobacco II, it was well before Tobacco II, that it just needs to be a substantial factor. Yes, it needs to be an immediate cause,  and certainly not a possible cause. Also abstract, I don't get it yet. I mean, what's your response? I mean, specifically asking him. He says, I probably would have bought it anyway. It's not dispositive. It's an argument that can be argued when it's time to try this matter as whether or not his credibility is to be believed or whether or not it's only a mix of information. But he's the plaintiff. So you're saying your plaintiff is not supposed to be believed? No, I'm saying he is to be believed, but T-Mobile gets an opportunity to argue that at the trial. This is not a summary. No, no, they'll accept it. They'll accept it. They'll say, no, no, no. You heard Lester. No, pardon me, the other person. Thompson. Yeah. He says he would have bought it anyway. Absolutely. It's good to have a plaintiff in here who's going to be telling the truth. This person told the truth. Well, the quote, is this quote correct? Well, if I had learned about it then, meaning when he's in the store, probably. I mean, that's the answer I wanted out of you, which is to say he came into the store not knowing. But once he's in the store, already having been lured, he probably would have bought it. Well, there's two ways to address that point, Your Honor. Well, it's a point I wish you'd made. I guess you can make it now. Thank you for doing that for me. First of all, he was lured into the store. There is case law in this circuit that says, well, the fraud is completed or actionable as soon as someone is lured in the first instance. The deceptive secure is the fraud in the first instance. I think the question itself is vague. It doesn't talk about whether or not he would have still, if the tax was imputed on the free phone or the phone that he actually paid $80 for, because we have to separate two different phone transactions. The position examiner did not articulate in that one question that they relied so heavily on, which case he's relying on the most or which circumstance he's relying on the most. You now have a little over three minutes. You want to say two. I do, Your Honor. How much are you going to give your co-counsel? I'm going to try and give him a minute. With respect to Ms. Voorhees, Your Honors, I think right there the crucial fact is that the court held that there was no evidence that Go Wireless, I'm going to speak specifically to Go Wireless, there was no evidence that Go Wireless had ever participated substantially in a transaction or had any role with respect to the advertisements. That's not the case. Go Wireless drew up the contract, secured the signatures, profited off of not only this transaction, but also the fact that AT&T was advertising for them and listing them as a store in their broadly disseminated publications. And for the court to say that Go Wireless had no actual role and say that therefore we can't have vicarious liability is error in and of itself. And at a very minimum, we should have been allowed to take discovery on that issue. Of course, we were limited to only class certification, and yet we have here a motion for summary judgment that disposed of ultimately the entire merits. So for those reasons, we ask that the court reverse the district court and instruct it to deny the motions for summary judgment. I want to give counsel a minute for injunctions, and then we'll give you your two minutes anyway. Thank you, Your Honor. I don't want to rehash anything that's in our briefs. We've discussed the legal cases as exhaustively as we could. But I just wanted to point out the distinction between the case here and the Lyons-Guest and Hodgers-Durgan cases, where there you've got a situation where a federal court is not enjoining a state or federal agency where there's a threat of greater immediate harm. Here, you've got sort of the flip side of that. The federal court is using its equitable power to eliminate or undermine or frustrate a state statutory remedy that under CAFA has to now be brought in federal court. And I guess with that distinction, and unless the court has any questions, I'll... Thank you. Good morning. My name is Jim Grant. I'm here on behalf of T-Mobile USA. Let me give the court a little bit of an outline first of how I plan to proceed. I'm joined by co-counsel for Verizon, AT&T, and Go Wireless. I plan to address, first of all, Tobacco II and the causation standard briefly and then focus primarily on Ms. Lasker's case, the one case against T-Mobile. But since we have three different cases, three different plaintiffs, and four different defendants, I'll be followed by Mr. Druyan on behalf of Verizon and Mr. Coccia on behalf of AT&T and Go Wireless. As the court, I think, has already recognized that the central question here is Tobacco II, the actual reliance standard, and particularly under that standard, the requirement that the misrepresentation, the alleged misrepresentation, be the immediate cause of the injury-producing conduct of the plaintiffs. And what I didn't hear at all in the comments from Mr. Tomasiewicz was what that standard really means. What it means is that without the misrepresentation, in all reasonable probability, the plaintiff would not have engaged in the injury-producing conduct. Or, to put it the other way, if notwithstanding that there was this alleged misrepresentation and the plaintiff didn't care and went forward with the transaction regardless, there was no actual reliance, there was no causation. I'd like to address Ms. Lasker's circumstances because I think they show the fallacy of plaintiffs' arguments. Mr. Tomasiewicz's comments don't reflect what Ms. Lasker's testimony was in her deposition. She testified that the only shopping she did before purchasing the phone from T-Mobile was on the Internet. She looked at various phones that were offered on the Internet. She found one that she liked. It was a Sharp TM150 model phone. It was offered for free with a rebate. She went to the store specifically interested in that phone. We know what the advertisement was for that phone because the store manager in the store went to the Web, printed it out, and put it in her file. The ad itself says, and it says it expressly, this is not a Web disclaimer, as Mr. Tomasiewicz was trying to suggest, but the ad says that taxes and shipping charges are extra. The ad says that this offer is only available through the 1-800 number of T-Mobile. Is that the only ad that was ever put on the Web for a T-Mobile phone? The evidence that's in the record, Your Honor, is that the ad, the offer, became available on February 22, 2005. The store manager said that was the ad that was appearing and was running at that time. Ms. Lasker goes into the store on February 23, 2005. So it is the only ad. Well, it was the only ad that was running the day before. It doesn't tell us whether there were ads running before that. It's the only ad that was running for that phone at that time with an offer that was for a free phone or a phone with a rebate. So this was the ad. I know, but you say this is the ad that was running at that time. You're not saying this was the only ad that ran on the Internet that you might have seen a week before. Fair enough. There may have been other ads on the Internet for other phones and other offers. Well, the record I'm asking, is there evidence that this was the only ad that ever ran for this phone? There is evidence that this is the only ad that was running at that time for this phone. Answer the question. Let's make it absolutely clear. If we accept her testimony that she saw an ad on the Internet, do we then have to conclude that the only ad that she saw, that document which is in that file, no other document, she had to have seen that document? Is the evidence, in other words, without contradiction? With this record, the Court should accept that that is the ad that she saw. No, well, I don't. And the reason I say that, if I may, is I can't tell the Court whether there were other ads six months before, two years before, or some other time. Two days before. One day before. No, you can't say that there was no other ad two days before. I can say that this phone was first advertised effective February 22nd, and she goes to the store on February 23rd. So we know that that was the ad that was running at that time. No, we don't. We don't know that this is an ad, that there was not a different ad running two days before. Well... I assume your company knows the ads that was running two days before. Right. And the evidence that we put into the record from the store manager was this was the ad that was running at that time. We didn't go back and say... Would you please quit using this weasel stuff, at that time. You know if there was a different ad running two days before. Is that right? Or are you in a position to know? The company could go back and look and see what ad... Has the company done that? Excuse me? Has the company done that? It was never requested. So the only thing you show is that there was this ad that ran the day before. And you're in a position to show that there was no other ad three days before, but you've not done that. We have not done that, Your Honor. But isn't that a problem? In other words, let's say we look at the ad and say, oh yeah, the ad is a pretty good ad, it's a disclosure. And we're arguing that there was a disclosure. That's what you say. So she couldn't have relied. Or, you know, if she says, I saw the ad, we see the ad, the ad is one with a disclosure, that's fine. But there's an issue when she comes in and says, I saw an ad, but it wasn't this one. There then becomes an issue of fact as to whether or not, if she did see the ad, it had to be this one. And that's why we're pressing you, I think. Because this is coming up on a summary judgment motion which says there are no material facts in dispute. And that's the question. Isn't that in dispute? Because she said, I didn't see something that told me that there was tax on these telephones. I didn't see that. She says at the beginning, I don't recall, maybe it gets even stronger. I didn't see it. There. Okay. That's the dispute. People can have different versions. And that doesn't make a dispute. What makes a dispute is whether or not there exist facts out there from which you can conclude A or only B. I understand the Court's question. Let me emphasize, though, and I urge the Court to do this, to look at her actual testimony and what she said. She did not say that I never saw that ad. She did not testify to that. We put the ad in front of her. She looked at it. She said, yes, I saw an advertisement for the Sharp TM150 phone. I saw that on the Internet. That was the only ad that I saw. We went through the ad. She said, I don't remember all the details of the ad because I didn't look at the details. I compared the features of the phone, but I didn't look at the details. So she did not focus on the fact that the ad said taxes are extra, but the ad said taxes are extra. Sorry. Could you give me ñ I don't have the ER in front of me. What page number is that testimony? The testimony itself? Yes. I believe it's Supplemental Excerpt of Record 13-14. I'm sorry. Say that one more time. Supplemental Excerpt of Record 13-14. 13-14. Okay. That's the portion of her testimony where she was talking specifically about that. Although, to be honest, Your Honor, she goes through talking about the advertising and what she did several times. And several times she acknowledges, yes, there was an ad, yes, I saw it. I just don't remember what particulars of the ad. And does she ever say, I saw this ad? She doesn't. She says she doesn't recall. She simply says, I don't recall. Did anyone ask her, did you ask her whether she saw it the day before? I did ask her that, Your Honor. And what did she say? She said it was shortly before. She said it was within a day or a couple days. She couldn't be certain the exact day. But she did acknowledge it was shortly before. And what we have shown from the ad itself was the offer opens on, I thought, February 22nd. In fact, she goes into the store on February 23rd. Now, I would, I don't want to move past the Court's questions, but two things. One, I want Verizon and AT&T to speak. But there are some other circumstances here for Ms. Laster that I want the Court to make sure to focus on as well. Now, bear in mind her claim in this case is supposed to be that I expected I was going to pay nothing, that because I was being offered a free phone, there wasn't going to be any sales tax charge on that. Well, the only charge that Ms. Laster pays when she goes to the store is sales tax. It's $28.22. She received documentation that fully explains what that tax is. In fact, T-Mobile's documentation even goes so far as to say that you may be charged based on the full retail value of the phone. And therefore, taxes may be higher than you expected. Ms. Laster doesn't focus on that. She doesn't raise any objections. But if she supposedly was believing that she was going to receive no charge whatsoever and had been misled by some advertisement, which she can't remember that was out there at some point, then one would have expected she'd say, wait, free is free. There can't be $28.22 worth of charge here. She didn't say anything to that effect at all. She didn't return the phone even within the 30-day window that she could have done as well. As I said, I do want to make sure. Does the court have another question? Okay. I did want to make sure that my co-counsel had an opportunity to speak as well. Can I say briefly to Judge Breyer's question, if this case were post-conception, that we would, again, move to a compel arbitration? I believe the motion would be granted. Good morning. My name is Richard Druyan. I represent Verizon Wireless. I will be brief. It's Verizon's position that plaintiff cannot establish that the alleged misrepresentation was an immediate cause of his injury, his injury being the money that he spent to buy the phone and the extra taxes that he paid. And I want to get back to Judge Fletcher's question in a moment because I think that's an important point. We don't have any facts in dispute. We're relying exclusively on the plaintiff's own testimony. He cannot prove that in all reasonable probability he would not have engaged in the injury-producing conduct, that is, the purchase of the phone, because he admitted that he probably would have purchased the phone had he known there was going to be sales tax in any case. But what do you make of the argument that we had to pull out of him or maybe put into him before we pulled out of him, that he comes into the store and only once in the store he realizes that? And at that point, probably, having invested the time, you know, I'm not necessarily telling you this is what – bait-and-switch is a very familiar tactic. Right. So what do you make of that argument? Proposition 64 makes a bait-and-switch case very, very difficult for a plaintiff to bring. And it's possible that it could be brought, but that's not what these plaintiffs did. These plaintiffs in particular – Mr. Thompson brought a case that said, I was injured in the payment of sales tax when I bought this phone because I thought it was going to be free. Even though he says, had I known that there was going to be a sales tax, I would have probably purchased the phone in any case. The point you raise is a good one, and it relates to the issue of bait-and-switch. That's not the case that they brought here. The case they brought here is, I was injured by the payment of sales tax. It isn't that I was injured because I spent some time to go to the store. In fact, they really abandoned any claim of a bait-and-switch. So I hear what you're saying, and I understand your question. But Proposition 64 makes it a requirement that the person show injury in fact and loss of money and property. And so what most plaintiffs do in these cases, they go and they argue that they were injured by the expenditure of the money, which is what Mr. Thompson did in this case. And so he can't prove that that injury, he would have suffered that injury as a result of the alleged misrepresentation because he says, I probably would have bought the phone in any case. So with respect to Mr. Thompson, there is no dispute. The facts are undisputed, and he cannot show that in all reasonable probability, I wouldn't have bought the phone when he says, I probably would have bought the phone. And the case he made, Judge Fletcher, is a case based upon that injury. It's not a bait-and-switch. And I hear what the Court is saying, but this is not a bait-and-switch case. Proposition 64 makes it very difficult for a plaintiff to bring a bait-and-switch case. I'm not saying it couldn't be brought, and it certainly could be brought by the Attorney General or a district attorney. I'm not defending in any way a bait-and-switch. But that's not what this case is. And this plaintiff, Mr. Thompson, did not suffer an injury, and there are no disputed facts. Any other questions? Thank you. Good morning, Your Honors. Robert Koch on behalf of AT&T Mobility. Similarly, Ms. Voorhees was the client that purchased her phone or got her free phone from AT&T Mobility. And similar to Mr. Thompson, the facts are undisputed. She came in, and she got her free phone. She paid sales tax. And it's the same thing she had done on two previous occasions. In fact, she had done this on six occasions, three of which are after the purchase or receipt of the free phone. It's that issue in this case. Because of that fact, she cannot show, similar to the argument raised by Mr. Drury just a moment ago, she cannot show that but for the advertising she would not have purchased this phone or gone in to get her free phone. She was not lured into the store. She was out shopping. She noticed a Go Wireless store, which I must say Go Wireless had never done any advertising or there's no record of any advertising. She did not know what Go Wireless was. She did not know it was a separate entity from AT&T. All the arguments that we make are applicable to Go Wireless as well. She was not lured into the store. She was out running errands. She knew that her two-year service plan was up, and she was entitled to a free phone. She knew that because she had done it two previous times before. She had paid sales tax two previous times before. The lawsuit's filed, and at least twice more after the lawsuit is filed, she goes and gets a free phone and pays sales tax. And she testifies that that sales tax is not material to her, that she can tolerate the $5 or $10 that she had to pay for sales tax. Because of that, she cannot say that she would not have gone in to get the free phone had she known that sales tax would have been applied. Any questions, Your Honor? All right. You have two minutes. Your Honor, the first question that came out was about arbitration and whether or not that would be revisited. One of the things we're going to argue is that by choosing to proceed with this appeal on the merits, they have now waived their right to go back to arbitration because they proceeded on the merits. Do we have to decide that, or if we remand to the district court? We do not, Your Honor, but I want the court to know that that is not something that should impede you or say, hey, our efforts will be wasted here in any way, shape, or form, and if for the only reason that it was a question that was asked at the very outset of our hearing today. But moving on to the standing issue, the defendants here have each made the same mistake that the district court made below, and that is reading too narrowly and, in fact, misreading Tobacco II. The California Supreme Court at least twice has described what it takes to create a substantial factor to create reliance. You're saying their argument is but-for. You're saying that they're coming in and they're saying but-for this. They wouldn't have bought it. And, in fact, the evidence is they bought it. Maybe they knew. Maybe they didn't know. Who knows? But it's not a but-for. The test isn't but-for. The test is not you have to show you wouldn't have acted that way. The test is you can show it's a substantial factor if you show it. But to quote from Engala v. Permanente, another California Supreme Court decision, and citing the restatement, it says, it is not necessary that reliance upon the truth be the sole or even predominant or decisive factor. It is not even necessary that he would not have acted or refrained from acting as he did unless he had relied on a misrepresentation. What the district court did was ignore that holding and made it necessary for my clients to prove that, and that is in and of itself error that demands reversal by this Court. And just a factual thing I want to clear up. There is no evidence in T-Mobile, even though it was in a position to never put before the court, that the web disclaimer that Ms. Laster saw was the only web disclaimer she could have ever seen and relied on. And, in fact, it is rebutted by Ms. Laster's own testimony that she never saw it. In fact, relied on other things that predated that disclaimer. Finally, a word about receipts. What is the problem with the defendant's reliance on these receipts? Setting aside the fact that the receipts are vague. For instance, Laster's receipt just says San Diego, California, comma, San Diego, California. It doesn't even use the word tax. It can't show that she should have known. We set aside those vagaries. It belies common sense because we know that we don't get receipts to the very end of the transaction. After the deception has already borne fruit in the form of getting the plaintiff or the consumer to the store and then switching them at the last moment. Yeah, but that doesn't really work because in order to get a receipt, you've got to hand over some money or your credit card. But you've already... The person doesn't get a receipt vague. Oh, and I didn't even pay anything. I mean, excuse me, you're talking about common sense. So let's... Well, certainly. Are you saying that she walked out of the store not realizing that she had paid a tax? Absolutely. She did not realize it until months afterwards. But she knew she paid something. She knew she paid something and the record is clear. She knew the phone wasn't free. No. She thought the phone was supposed to be free. She relied on the defendant's statements. So what do you think she paid the money for? Service, Your Honor. It is clear in the record. These are, remember, bundled transactions. You don't get the, quote, unquote, free phone unless you sign up for a one- or a two-year thing. And we've got FCC fees. We've got all these other things. Got it. And that's why the receipts are not dispositive. Again, we ask that the court reverse the district court. Thank you very much. Thank you. The case is arguably submitted. Do you want to hear the last case or do you want to take a break? I'm fine. Do you want to hear the last case or do you want to take a break? I'd like to take a break, actually. All right. The court will take a break, short break, before the final case is appointed.
judges: Breyer, Reinhardt, Fletcher